UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAY B. COLLIER,<br>　　　　Plaintiff,<br>　　v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>　　　　Defendant. | Case No. 19-cv-00546-DMR<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 15, 17 |

　　　　Plaintiff Clay B. Collier moves for summary judgment to reverse the Commissioner of the Social Security Administration's (the "Commissioner's") final administrative decision, which found Plaintiff not disabled and therefore denied his application for benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 et seq. [Docket No. 15.] The Commissioner cross-moves to affirm. [Docket No. 17.] For the reasons stated below, the court grants the Commissioner's motion and denies Collier's motion.

**I.　　BACKGROUND**

　　　　On March 27, 2015, Collier received an unfavorable decision by an Administrative Law Judge ("ALJ") finding that he is not disabled. Administrative Record ("AR") 109-120. That ruling created an ongoing presumption that Collier was able to work beyond the date of that decision. Collier then filed a new application for Social Security Disability Insurance benefits on April 8, 2015 and filed an application for Supplemental Security Income benefits on June 8, 2015, alleging disability beginning June 30, 2012. AR 313-336, 341-342. He later amended his alleged onset date of disability to June 8, 2015. An ALJ held a hearing and issued an unfavorable decision on March 13, 2018. AR 12-28. The ALJ found that Collier has the following severe impairments: polysubstance dependence; depression; anxiety; PTSD; and psychotic disorder. A.R. 18. The ALJ concluded that Collier's impairments meet listings 12.03, 12.04, 12.06, and 12.15, but that in

the absence of substance use, he would not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. A.R. 19-20. The ALJ then determined that in the absence of substance use, Collier would have the residual functional capacity ("RFC")

> to perform medium work . . . except that he can perform simple, routine tasks and make simple work-related decisions consistent with unskilled, SVP 2 work as defined in the Dictionary of Occupational Titles. He can interact frequently with supervisors, coworkers, and the public. He should work in areas that involve no more than moderate noise; and he should avoid exposure to unprotected heights and moving mechanical parts.

A.R. 21. The ALJ concluded that Collier is not disabled because in the absence of substance abuse, he is capable of performing jobs that exist in the significant numbers in the national economy. AR 26-27.

After the Appeals Council denied review, Collier sought review in this court. [Docket No. 1.]

## II. ISSUES FOR REVIEW

1. Did the ALJ err in assessing the materiality of Collier's substance use?
2. Did the ALJ err in weighing the medical evidence?
3. Did the ALJ err in evaluating Collier's credibility?
4. Did the ALJ err in determining that in the absence of substance use, Collier does not meet a listing?
5. Is the ALJ's determination of Collier's RFC supported by substantial evidence?
6. Did the ALJ err in failing to call a vocational expert?

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the district court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See*

*Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a mere scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## IV.     DISCUSSION

Collier argues that the ALJ committed numerous errors. He asserts that the ALJ erred in determining that drug and alcohol use was a contributing factor material to the determination of disability. He also argues that the ALJ erred in evaluating the medical opinions, making a credibility determination, finding that he does not meet a listing in the absence of drug and alcohol use, determining his RFC, and failing to obtain vocational expert testimony. Because the ALJ's weighing of the medical evidence formed the basis for his other findings, the court begins its analysis there.

### A.     Weighing of the Medical Opinions

#### 1.     Legal Standard

Courts employ a hierarchy of deference to medical opinions based on the relation of the doctor to the patient. Namely, courts distinguish between three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("non-examining physicians"). *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a non-

3

examining physician's opinion. *Id*.

The Social Security Act tasks the ALJ with determining credibility of medical testimony and resolving conflicting evidence and ambiguities. *Reddick*, 157 F.3d at 722. A treating physician's opinion, while entitled to more weight, is not necessarily conclusive. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). To reject the opinion of an uncontradicted treating physician, an ALJ must provide "clear and convincing reasons." *Lester*, 81 F.3d at 830; *see, e.g.*, *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (affirming rejection of examining psychologist's functional assessment which conflicted with his own written report and test results); *see also* 20 C.F.R. § 416.927(d)(2); SSR 96-2p, 1996 WL 374188 (July 2, 1996). If another doctor contradicts a treating physician, the ALJ must provide "specific and legitimate reasons" supported by substantial evidence to discount the treating physician's opinion. *Lester*, 81 F.3d at 830. The ALJ meets this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725 (citation omitted). "[B]road and vague" reasons do not suffice. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). This same standard applies to the rejection of an examining physician's opinion as well. *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion alone cannot constitute substantial evidence to reject the opinion of an examining or treating physician, *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984), though a non-examining physician's opinion may be persuasive when supported by other factors. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (noting that opinion by "non-examining medical expert . . . may constitute substantial evidence when it is consistent with other independent evidence in the record"); *Magallanes*, 881 F.2d at 751-55 (upholding rejection of treating physician's opinion given contradictory laboratory test results, reports from examining physicians, and testimony from claimant). An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa*, 143 F.3d at 1244. An opinion that is more consistent with the record as a whole generally carries more persuasiveness. *See* 20 C.F.R. § 416.927(c)(4).

4

### 2. Analysis

Collier argues that the ALJ erred by giving substantial weight to the opinions of non-examining medical expert ("ME") Julian Kivowitz, M.D., and by not giving sufficient weight to the opinions of treating physician Aislinn Bird, M.D. and examining physician Lorraine Schnurr, Ph.D. He also argues that the ALJ erred by giving limited weight to the opinions of L.C.S.W. Joni K. Teague and MFT Trainee Alexandra Miley.

#### a. Aislinn Bird, M.D.

Aislinn Bird, M.D., completed a mental impairment questionnaire on July 7, 2017. A.R. 1713-1717. She noted that her opinions were based on Collier's history and medical file, progress and office notes, and laboratory results and other tests. She first treated Collier on September 9, 2016 and had had contact with him every 1-2 weeks. A.R. 1713. The record contains treatment notes by Dr. Bird from September 2016 through January 2018. *See* Exs. B17F, B23F (LifeLong Medical Care records). Dr. Bird noted Collier's diagnoses of PTSD and bipolar I disorder, severe, current episode depressed with psychotic features, with an approximate onset date of "early teenage years." She also noted that Collier's treatment included medication, psychotherapy, and intensive care management, with "minimal response." A.R. 1713.

Dr. Bird identified numerous signs and symptoms of Collier's condition, including "deficits in complex attention; executive function; learning and memory; language; perceptual-motor, or social cognition," disorganized thinking and behavior, and difficulty concentrating. A.R. 1714. She opined that Collier has marked or extreme limitations in all aspects of functioning. A.R. 1715. She described the following clinical findings that support her opinion of Collier's functioning:

> Patient is frequently late to his appointments, in part due to paranoia and refused to have a watch or phone until recently. He has PTSD-related nightmares and night terrors that interfere with sleep and frequent flashbacks and hypervigilance which can impact his ability to take public transportation. Patient is currently in a depressive episode with low energy, motivation, poor concentration, sense of guilt and anhedonia. His last manic episode was roughly three months ago with decreased need for sleep, pressured speech, racing thoughts, impulsive behavior and psychotic features (auditory hallucinations, delusions of grandiosity and paranoid ideation[)].

A.R. 1716.

Dr. Bird reported that Collier was currently using alcohol or drugs, and that his impairments would not significantly improve in the absence of drug or alcohol abuse. A.R. 1716. According to Dr. Bird, Collier's symptoms and limitations cause him to have difficulty attending appointments, regularly taking medications, and consistently engaging in treatment. She further opined that his symptoms are not expected to fluctuate over time "given the severity and chronicity of the patient's behavioral health conditions[.]" A.R. 1717.

Dr. Bird's opinion was contradicted by the opinion of ME Dr. Kivowitz, who testified that if Collier was not using drugs or alcohol, his abilities to understand, remember, and apply information; interact with others; concentrate to maintain pace; and adapt or manage himself would be only moderately impaired. A.R. 45. Accordingly, the ALJ was required to provide "specific and legitimate reasons" supported by substantial evidence to discount the Bird opinion. *See Lester*, 81 F.3d at 830-31.

The ALJ assigned "limited weight" to Dr. Bird's assessment on the ground that it was "not fully supported by her chart notes and the record as a whole." A.R. 23. The ALJ noted his finding that "the weight of the evidence shows the claimant would not be so severely impaired in the absence of drug or alcohol use," and that "the record demonstrates that the claimant's co-occurring mental impairments continue to produce some symptoms during periods of sobriety, but that they are not so severe as to preclude him from sustaining simple work." A.R. 24. Additionally, the ALJ noted that Dr. Bird "support[ed] her assessment with findings such as frequent tardiness to appointments," but that her chart notes "indicate otherwise." He also noted that her assessment described a recent manic episode with psychotic symptoms, *see* A.R. 1716, but that she omitted the fact that the episode was preceded by a relapse and active substance abuse. A.R. 24.

The court concludes that the ALJ provided legally sufficient reasons for assigning limited weight to the Bird opinion. In discussing Dr. Bird's opinions and concluding that Collier would not be severely impaired in the absence of drug or alcohol use, the ALJ referred to his discussion of Collier's functioning earlier in the opinion. *See* A.R. 24. In that section of the opinion, the ALJ wrote that even though the record showed that Collier's "symptoms of depression and paranoia do not entirely abate during periods of sobriety, his treatment records do indicate that they decrease

significantly even after short periods of sobriety and with medication compliance." A.R. 22. Specifically, the ALJ discussed a period of several months in 2016 during which Collier was sober and displayed improvement in his condition that Dr. Bird documented in treatment notes. For example, the ALJ noted a September 16, 2016 treatment note by Dr. Bird in which she wrote that Collier had an upcoming "scheduled intake at Cherry Hill detox . . . where he will be for one week until he is admitted into Croinin [sic] House rehab program." A.R. 1393. Collier reported to Dr. Bird that he was "doing really well," A.R. 1393, and as the ALJ observed, Dr. Bird noted Collier's "[i]mproved clinical presentation [was] likely due to patient being sober for one week." A.R. 22-23 (citing A.R. 1395). The following month, on October 27, 2016, Dr. Bird noted Collier's observation, "[i]t's been a good month." A.R. 1389. Dr. Bird noted that he reported "some interpersonal conflict with some of his peers" at Cronin House, but that he was able to use coping skills to manage, which she wrote "shows good insight." A.R. 23 (discussing A.R. 1389, 1391). Dr. Bird also observed that Collier "continues to thrive in his recovery process, is engaged at the Cronin House, future oriented . . . and is more calm, focused and able to follow a conversation." A.R. 1391. The ALJ noted that in early December 2016, Collier "reported getting along with his peers well and attending AA meetings 3 times per week." A.R. 23 (discussing A.R. 1383).

The ALJ also noted that even though Collier "reported ongoing depressive symptoms and flashbacks despite no alcohol or meth use, his mental status examinations during this period are largely unremarkable." A.R. 23. In support, he cites four mental status examinations from November and December 2016, which included Dr. Bird's observations such as logical thought process; perception, thought content, and cognition within normal limits; no hallucinations; normal or mildly impaired insight and judgment; full affect, clear speech, and cooperative attitude. *See* A.R. 23 (citing A.R. 1377, 1380, 1383, 1386). *See also* A.R. 1377 (Dec. 22, 2016 note, "Clay has been attending all of the required groups and overall doing well."). During this period, Collier's appearance was unremarkable ("dressed in clean casual clothes" and "good grooming and hygiene") and his posture, eye contact, and activity were "average" or within normal limits. He also appeared to be taking his psychiatric medications consistently. *See* A.R. 1377-78, 1380-81, 1383-84, 1386-87.

7

The ALJ also found that the record demonstrated "similar findings during other periods" in which Collier had sought treatment for his mental health. A.R. 23. For example, he cited progress notes from December 2015 in which Collier reported his sobriety following participation in a rehabilitation program and denied psychotic symptoms. He had a healthy appearance, cooperative attitude, calm behavior, normal speech, euthymic mood, appropriate affect, linear thought process, thought content within normal limits, intact immediate, recent, and remote memory, and fair judgment. A.R. 1004-05. The provider started him on a new medication regimen. A.R. 1005.

The late 2016 improvement in Collier's condition that Dr. Bird documented was only temporary; as the ALJ noted, a treatment note by Dr. Bird from January 12, 2017 contained her observations that Collier was over an hour late to his appointment, which she noted was unusual, and "presented with dirty cloths [sic], and poor hygiene, which is also out of character for him." A.R. 23 (citing A.R. 1373). Collier had stopped taking his medications the week before his appointment and had not eaten in three days because "he believe[d] that 'They' are poisoning his medications and food." A.R. 1373. Even though he denied substance use at that appointment, on January 20, 2017, he admitted to Dr. Bird that he had "relaps[ed] on alcohol two weeks ago" and relapsed on cannabis. A.R. 1370.

Based on the foregoing evidence, the ALJ reasonably found Dr. Bird's treatment notes documenting the improvement in Collier's symptoms during a period of abstinence from drug and alcohol use to be inconsistent with her opinion that his impairments would *not* significantly improve in the absence of alcohol and substance abuse. A.R. 24. The remaining reasons the ALJ gave to discount Dr. Bird's opinions are also legally sufficient. He wrote that she "support[ed] her assessment with findings such as frequent tardiness to appointments," but that her chart notes "indicate otherwise," citing a January 12, 2017 note in which she wrote, "Pt was over an hour late to his appointment, which is out of character for him." A.R. 24 (citing A.R. 1373). Specifically, Dr. Bird wrote in her July 2017 assessment that Collier "is frequently late to his appointments, in part due to paranoia and refused to have a watch or phone until recently." A.R. 1716. However, the January 12, 2017 treatment note is the only documentation by Dr. Bird of Collier's lateness to appointments prior to her July 2017 assessment. Therefore, the ALJ did not err in giving less

8

weight to Dr. Bird's opinions due to the inconsistency between the assessment and her chart notes.

The ALJ also noted that while Dr. Bird's assessment referred to a recent manic episode with psychotic symptoms, *see* A.R. 1716, she omitted the fact that the episode was preceded by a relapse and active substance abuse. Dr. Bird's own treatment notes documented that relapse. A.R. 24 (citing A.R. 1716, 1364 (Feb. 17, 2017 note, "current episode manic with psychotic features"), 1366-68 (Feb. 3, 2017, "Continues to drink several times per week") 1369-70 (Jan. 20, 2017 note, "'uses' alcohol for sleep or pain," uses cannabis "almost daily").

In sum, the court concludes that the ALJ provided specific and legitimate reasons supported by substantial evidence to discount Dr. Bird's opinion.

### b. Lorraine Schnurr, Ph.D.

Lorraine Schnurr, Ph.D., evaluated Collier and completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) and report. A.R. 1719-1727. It is not clear when the examination took place; although the report states that the evaluation was on September 30, 2017, the report itself is dated two years prior, on October 15, 2015. *See* A.R. 1721.

In the Medical Source Statement, Dr. Schnurr opined that Collier has only mild limitations in the abilities to understand and remember simple and complex instructions, carry out simple and complex instructions, and make judgments on simple and complex work-related decisions. A.R. 1719. However, she also opined that Collier is markedly impaired in his abilities to interact appropriately with the public, supervisors, and coworkers, and respond appropriately to usual work situations and changes in a routine work setting. In support, she noted that Collier's "test results indicate memory loss." A.R. 1720. According to Dr. Schnurr, Collier "has poor focus and concentration," and that his history of alcohol and drug abuse "seem to contribute to his impairment." A.R. 1720.

Dr. Schnurr's report indicates that she administered tests, reviewed 51 pages of notes regarding one hospitalization, and interviewed Collier. A.R. 1721. Collier reported smoking marijuana on a daily basis and drinking beer and hard liquor. He also reported using crack cocaine and snorting heroin "in the past," and stated that he had not use amphetamines in the last ten days. A.R. 1722.

Collier was alert and oriented to time, place, person, and situation. His speech was slow and coherent. He had an anxious affect which was appropriate to content, with a depressed mood and no evidence of psychosis or confusion. His insight and judgment "seemed limited." He appeared to make a good faith effort, but "responded slowly and had focusing difficulty." A.R. 1723. His immediate attention, long term, short term, and immediate memory appeared impaired. A.R. 1723.

Testing revealed mild cognitive impairment and Collier scored in the low average range of intellectual functioning. He scored below average in verbal comprehension, perceptual reasoning, and working memory. A.R. 1724. He had deficits in his auditory, visual, visual working, immediate, and delayed memory. According to Dr. Schnurr, Collier's prognosis is guarded as it relates to his work functioning. A.R. 1725.

At the conclusion of her written report, Dr. Schnurr opined that Collier has a "guarded ability to understand, remember and carry out simple and complex instructions," appearing to contradict her Medical Source Statement. A.R. 1726. She also opined that Collier has a "poor ability to maintain activities within a schedule and maintain regular attendance"; "would have difficulty maintaining regular attendance and persistence," and "would have difficulty completing a workday or workweek related to his fatigue, memory loss, focusing difficult, distractibility, difficulty getting along with others, [symptoms] of bipolar disorder, paranoia, lack of a work routine for the last five years and [treatment] for substance use." A.R. 1726.

The ALJ assigned Dr. Schnurr's opinions "limited weight" for several reasons: the opinions were internally inconsistent; Dr. Schnurr based her opinions in part on poor memory testing during the evaluation, even though the record does not show memory loss; and Dr. Schnurr based her opinions on Collier's subjective reports. A.R. 25. Dr. Schnurr's opinion was contradicted by Dr. Kivowitz's opinion; therefore, the ALJ was required to provide "specific and legitimate reasons" supported by substantial evidence to discount the Schnurr opinion. *See Lester*, 81 F.3d at 830-31. The court concludes that the ALJ did not err with respect to Dr. Schnurr's opinions. First, the ALJ explained that although Dr. Schnurr opined that Collier has only mild limitations in the ability to understand, remember, and carry out instructions and make judgments

1  on simple and complex work-related decisions, elsewhere in her report she opined that he has a
"guarded ability" with respect to such functions, contradicting her own assessment without
explanation. A.R. 25 (discussing A.R. 1719, 1726).

Next, the ALJ noted that Dr. Schnurr based her conclusions on Collier's "test results indicat[ing] memory loss," but the ALJ found that "the record does not elsewhere evidence memory loss supportive of her conclusions." A.R. 25 (citing A.R. 1720). As the ALJ noted, Collier was able to provide Dr. Schnurr with a detailed personal, medical, and mental health history during the examination, and in the course of treatment with other providers. A.R. 25 (citing A.R. 1722-23). *See also, e.g.*, A.R. 1396 (Sept. 9, 2016 note by Dr. Bird, "Patient is a good historian"). The ALJ properly considered Dr. Schnurr's opinion to be inconsistent with her own observations during the examination. The ALJ also discounted Dr. Schnurr's opinion that Collier "would have difficulty maintaining regular attendance and persistence related to his reported physical pain, fatigue, difficulty sitting still for long periods of time and his bipolar disorder [with] psychotic [symptoms]," A.R. 1726, correctly noting that "none of these reported symptoms were clinically observed during the examination, including signs of psychosis." A.R. 25; *see* A.R. 1723 ("There was no evidence of psychosis or confusion."). Further, the ALJ wrote that Collier "was able to focus sufficiently to complete the interview and testing," thus undermining Dr. Schnurr's opinion about his ability to focus and distractibility. A.R. 25; *see also* A.R. 1726. The court finds no error with respect to Dr. Schnurr's opinions.

### c. Julian Kivowitz, M.D.

As noted, Dr. Kivowitz testified that if Collier was not using drugs or alcohol, his abilities to understand, remember, and apply information; interact with others; concentrate to maintain pace; and adapt or manage himself would be only moderately impaired. A.R. 45. According to Dr. Kivowitz, Collier "certainly meets a listing [when using] substances," but would not meet a listing "off substances." A.R. 44. He testified, "based on my experience, people who are on substances, do better functioning, no matter what the diagnosis, in – when they're off substances." A.R. 44.

The ALJ accorded Dr. Kivowitz's "substantial weight," stating that "the underlying record

11

1  of treatment demonstrates that the claimant's symptoms and functioning have improved during
2  periods of sobriety." A.R. 23. According to the ALJ, "[e]vidence of the claimant's improved
3  mental status is consistent with Dr. Kivowitz's testimony improvement would be expected in the
4  absence of substance use." A.R. 23.

5  The court finds that the ALJ did not err in assigning "substantial weight" to Dr. Kivowitz's
6  opinions, because substantial evidence supported the ALJ's determination that Collier's mental
7  health symptoms "decrease significantly even after short periods of sobriety and with medication
8  compliance," as discussed above in connection with Dr. Bird's opinions. A.R. 22-23.

### d.     Non-Medical Opinions

#### i.     Joni K. Teague, LCSW

Joni K. Teague, L.C.S.W., wrote a letter on September 23, 2015 regarding Collier. A.R. 644. She noted that Collier had attended six mental health outpatient sessions since July 2015. She noted Collier's diagnoses of bipolar disorder, NOS and PTSD, and noted Collier's seven psychiatric hospitalizations for suicidal and dangerous behavior. According to Teague, "[w]hen [Collier] is able to get psychotropic medication to manage his psychiatric symptoms, Depakote and Gabapentin, he reports that they are helpful to him." Teague further wrote that Collier "continues to struggle with symptoms of anxiety, hypervigilance, severe depression, impaired concentration, impulsivity and reactiveness . . . [t]hese symptoms severely impair [Collier's] ability to maintain gainful employment." A.R. 644.

The ALJ assigned "limited weight" to Teague's opinion because "it does not specifically assess the claimant's functioning and is based on a very limited treatment relationship within a short period in 2015." A.R. 24.

Social workers are not considered "acceptable medical sources" under the regulations. *Kelly v. Astrue*, 471 Fed. Appx. 674, 676 (9th Cir. 2012) (citing 20 C.F.R. § 404.1513(a)). Rather, they are "other sources" of evidence, and their opinions are not entitled to the same weight as those of "acceptable medical sources." *Id*. As such, their opinions are reviewed under the same standard used to evaluate lay witness testimony. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010). To discount the opinion of a social worker, the ALJ need only provide

"reasons germane to each witness for doing so.'" *Kelly*, 471 F. App'x at 676 (quoting *Turner*, 613 F.3d at 1223-24). The court finds that the ALJ satisfied this standard as to Teague's opinion, which contains a conclusory statement about Collier's ability to maintain employment and does not address his functioning with any specificity.

### ii. Alexandra Miley, MFT Trainee

Alexandra Miley, MFT Trainee, supervised by Linda Ross, MFT Supervisor, completed a mental impairment questionnaire on January 15, 2015. A.R. 363-366. She noted that she had seen Collier weekly since September 2014, for a total of nine sessions. Miley opined that Collier's conditions were expected to last at least 12 months and that he is not a malingerer. In response to the question, "would the patient's impairments remain as severe in the absence of substance use," Miley wrote, "This is difficult to determine at this point, but to my knowledge it seems that my client will continue to have impairments without substance use based on his history & presentation." A.R. 363. She opined that Collier has marked limitations in several areas, including the abilities to understand, remember, and carry out simple instructions, maintain attention for two-hour segments, complete a normal workday and workweek, and work with or near others without being unduly distracted or distracting them. A.R. 365. She opined that Collier is extremely limited in his ability to deal with normal work stress. A.R. 365.

On May 26, 2015, Miley submitted a letter accompanying Collier's records in which she noted her diagnoses of major depressive disorder and generalized anxiety. A.R. 464. She also opined that he has "great difficulty functioning in activities of daily living and social environments due to high levels of anxiety, hypervigilance, and emotional reactivity associated with his mental health conditions, and would be impaired in an employment setting due to these symptoms." Miley also noted that Collier is "hard of hearing, which . . . also exacerbates his anxiety and makes it difficult for him to feel safe much of the time." The May 2015 assessment is silent as to Collier's drug and alcohol use.

The ALJ accorded "limited weight" to both of Miley's opinions. As mental health counselors are not "acceptable medical sources," the ALJ was required to provide "reasons germane" to Miley to disregard her opinions. *See Kelly*, 471 Fed. Appx. at 676. The court finds

13

that the ALJ satisfied this standard with respect to both assessments. In her January 2015 assessment, Miley stated that it was "difficult to determine at this point" whether Collier's impairments would "remain as severe in the absence of substance use" and that "it seems" that Collier would continue to be impaired even if he were not using alcohol or drugs. A.R. 363. The ALJ described her opinion as equivocal. He found that her overall assessment appears to consider the impact of substance abuse on Collier's functioning and is thus consistent with his finding that Collier's impairments meet numerous listings when he is using substances. However, the ALJ found that her suggestion that Collier would be severely impaired even without substances was inconsistent with other evidence showing improvement when abstaining from drugs and alcohol. A.R. 24. The court finds this reason is legally sufficient to discount her January 2015 opinion and finds no error.

As to the May 2015 opinion, the ALJ noted that the "narrative makes no reference whatsoever to the claimant's significant history of substance abuse." A.R. 24. Miley's silence as to Collier's ongoing, well-documented alcohol and substance abuse supports the inference that she did not consider the effects of the alcohol and substance abuse on his functioning in that assessment. As with the January 2015 opinion, the court finds no error in the ALJ's decision to assign the May 2015 opinion limited weight.

### B. The Drug Addiction and Alcoholism Analysis

Collier argues that the ALJ erred by finding that his substance use is a contributing factor material to the determination of disability.

#### 1. Legal Standard

When the record demonstrates that substance abuse has occurred in conjunction with an alleged disability, the ALJ may not find a claimant disabled "if alcoholism or drug addiction would . . . be a contributing factor material to the . . . determination that the individual is disabled." 42 U.S.C. § 1382c(a)(3)(J); *see* 20 C.F.R. § 416.935(a) & (b). In determining whether a claimant's drug abuse and alcoholism ("DAA") is material, the test is whether the individual would still be found disabled if he or she stopped using drugs or alcohol. *See* 20 C.F.R. §§ 404.1535(b), 416.935(b); *Parra v. Astrue,* 481 F.3d 742, 746-47 (9th Cir. 2007); *Sousa v.*

14

*Callahan,* 143 F.3d 1240, 1245 (9th Cir. 1998). The ALJ must "evaluate which of [the claimant's] current physical and mental limitations . . . would remain if [the claimant] stopped using drugs or alcohol and then determine whether any or all of [the claimant's] remaining limitations would be disabling." 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). If the ALJ determines that the claimant's remaining limitations are disabling, then the claimant's DAA is not a material contributing factor to the determination of disability, and the claimant is disabled, independent of his or her DAA. *See* 20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii). The claimant has the burden of showing that he or she would qualify as disabled absent DAA. *See Parra*, 481 F.3d at 748.

Social Security Ruling ("SSR") 13-2p sets forth the procedure for evaluating cases involving DAA, which the ruling defines as "Substance Use Disorders; that is, Substance Dependence or Substance Abuse as defined in the latest edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM) published by the American Psychiatric Association." SSR 13-2p, 2013 WL 621536, at *3. It instructs adjudicators to "apply the appropriate sequential evaluation process twice. First, apply the sequential process to show how the claimant is disabled. Then, apply the sequential evaluation process a second time to document materiality[.]" *Id.* at *6. Although SSRs do not have the force of law, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

SSR 13–2p(7) provides that where a claimant has co-occurring mental disorder(s), there must be "evidence in the case record that establishes that [the] claimant . . . would not be disabled in the absence of DAA" to support a DAA materiality determination. SSR 13–2p(7), 2013 WL 621536, at *9. The ALJ may not "rely exclusively on medical expertise and the nature of a claimant's mental disorder" to support a finding of DAA materiality. *Id.*

### 2. Analysis

In this case, the ALJ found that Collier's impairments meet the listings for depressive, bipolar and related disorders, anxiety disorders, trauma and stressor-related disorders, and schizophrenia and other psychotic disorders (listings 12.04, 12.06, 12.15, and 12.03). A.R. 19.

He concluded that the evidence demonstrates marked impairment in understanding, remembering, and applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. A.R. 19-20. The ALJ then determined that in the absence of alcohol or substance use, Collier's remaining limitations would not meet or medically equal the criteria of the four listings, and that he would be only moderately limited with respect to his functioning. A.R. 20.

In making that determination, the ALJ discussed evidence of Collier's functioning during periods of sobriety. A.R. 20-21. He also discussed the record evidence at length, including evidence of decreased symptoms of depression and paranoia during periods of sobriety and medication compliance, Dr. Kivowitz's testimony, and the other medical and non-medical opinions in the record about Collier's functioning. A.R. 22-25. He ultimately concluded that Collier's "substance use disorder is a contributing factor material to the determination of disability because [Collier] would not be disabled in the absence of substance use." AR. 27.

Collier argues that the ALJ erred in his analysis. According to Collier, the ALJ based his conclusion that Collier's drug and alcohol abuse is a contributing factor material to the determination of disability on 1) "Collier's ability to remain involved in his medical care, 2) unremarkable mental status examinations; 3) improvement in mental health symptoms 'even after short periods of sobriety and with medication compliance'." Pl.'s Mot. 5. Collier asserts that these reasons "are not clear and convincing in light of the entire case record." *Id*. Collier cites no authority that a clear and convincing reasons standard applies to the DAA analysis. In fact, it is well-established that "a claimant bears the burden of proving that drug or alcohol addiction is not a contributing factor material to his disability." *Parra*, 481 F.3d at 748. Moreover, Collier's arguments about the ALJ's DAA analysis essentially challenge the ALJ's interpretation of and decisions regarding the weight given to the evidence of Collier's condition during periods of substance and alcohol abuse and periods of abstention from the same. *See* Pl.'s Mot. 5-9. Reasonable minds may differ on the issue of whether Collier's co-occurring mental disorders would improve to the point of nondisability in the absence of substance and alcohol abuse. But that is not the legal standard. At issue is whether the ALJ's materiality determination is supported

16

by substantial evidence and free from legal error. The court concludes that it is. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld.").

### C. The Credibility Assessment

Collier next argues that the ALJ erred in assessing his credibility. His argument on this issue in its entirety is as follows:

> [T]he ALJ's reasoning for finding Mr. Collier's statements regarding the nature of his impairments to be inconsistent with the evidence in the record . . . appears to track the reasoning addressed above with respect to the ALJ's improper bases for finding Mr. Collier's substance use to be material. Thus, Mr. Collier incorporates the arguments set forth above with regard to addressing Mr. Collier's symptom testimony.

Pl.'s Mot. 9 (internal citations omitted). Given the court's finding that the ALJ did not err with respect to his determination that Collier's substance use is material, the court concludes that Collier has failed to show error with respect to the ALJ's credibility determination.[1]

## V. CONCLUSION

For the foregoing reasons, the Commissioner's motion for summary judgment is granted. Collier's motion for summary judgment is denied.

**IT IS SO ORDERED.**

Dated: March 12, 2020



_____
Donna M. Ryu
United States Magistrate Judge

---

[1] Collier's remaining arguments are that the ALJ erred in determining his impairments did not meet a listing, which is a variation of his DAA analysis argument. He also asserts that the ALJ erred in assessing his RFC and in failing to obtain testimony by a vocational expert. These arguments similarly rest on Collier's assertions that the ALJ erred in weighing the medical evidence and performing the DAA analysis. As discussed above, the court finds no error with respect to the weighing of the medical opinions and the DAA analysis, and accordingly finds no error with respect to Collier's remaining arguments.